WILLIAM LUNDY *et al.*, Plaintiffs-Appellees, *v.* BOYLE INDUSTRIES, INC., *et al.*, Defendants-Appellants.

Third District   No. 76-356

Opinion filed March 24, 1977.

William H. Dailey, of Califf, Harper, Fox & Dailey, of Moline, for appellants.

Marshall E. Douglas, of Jackson, Douglas & DePorter, of East Moline, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
Defendants Boyle Industries, Malstrom & Sharp Trucking & Excavating Co., General Growth Properties, and Martin Bucksbaum, trustee of General Growth Properties, appeal from a decree of the Circuit Court of Rock Island County in an action to enforce mechanics' liens in favor of plaintiffs who had supplied fill material to real estate owned by Martin Bucksbaum, as trustee for defendant General Growth Properties. Plaintiffs William Lundy, Everette E. Snodgrass, Robert E. Kay, and Jerry L. Peterson brought an action pursuant to the Mechanics' Liens Act of the State of Illinois (Ill. Rev. Stat. 1973, ch. 82, par. 1 *et seq.*) to enforce the mechanics' liens in favor of plaintiffs who alleged that they had supplied fill material on real estate for use in the construction of a shopping center on property owned by Martin Bucksbaum as trustee, as we have indicated. Following a trial in the Rock Island County Circuit Court, the trial court entered a decree finding that plaintiffs should have a lien upon the real estate of defendants, and that, in the event defendants failed to make certain ordered payments to plaintiffs to satisfy the liens, the property subject to the liens shall be sold at public auction.

On appeal in this court, defendants contend (1) that plaintiffs failed to properly notify the defendant owners of the claimed liens, (2) that plaintiffs failed to properly file claims for liens, and (3) that plaintiffs failed to prove ownership in defendants' of all of the property to which the fill material was delivered.

Defendant Martin Bucksbaum, as trustee of defendant General Growth Properties, owned certain real estate in or near Moline, Illinois, on which a portion of the Southpark Shopping Center was to be built. On November

19, 1971, defendant Malstrom & Sharp Trucking and Excavating Co. entered into a written contract with defendant Boyle Industries, Inc., which in turn contracted with Martin Bucksbaum, trustee of General Growth Properties. Under the terms of the contract with Boyle, Malstrom & Sharp agreed to haul the dirt for the development of the Southpark Shopping Center. Plaintiffs Lundy (on November 18, 1971), Snodgrass (on December 15, 1971), Kay (on November 19, 1971) and Peterson (on November 1, 1971) orally agreed with defendant Malstrom & Sharp to haul dirt, in plaintiffs' trucks, for the development of Southpark. In addition thereto, plaintiff Kay had agreed to provide a bulldozer and operator, which were used primarily at a borrow pit three miles away from Southpark. Plaintiff Snodgrass completed his work on the project on February 22, 1972; plaintiffs Kay, Lundy, and Peterson completed their work on the project on May 5, 1972.

Plaintiffs Lundy, Snodgrass, Kay and Peterson mailed notices of mechanics' liens to the owner of the real estate respectively on May 16, 1972, May 8, 1972, June 26, 1972, and May 12, 1972. In addition thereto, all of the parties filed claims for liens in the office of the recorder of deeds for the County of Rock Island (the Lundy lien on May 24, 1972, the Snodgrass lien on May 15, 1972, the Kay lien on July 7, 1972, and the Peterson lien on May 22, 1972). The mechanics' lien action with which we are concerned was instituted by a complaint filed by the plaintiffs on July 23, 1973, and was tried on the amended complaint of plaintiffs for foreclosure of their mechanics' liens. Following the submission of evidence in the case, the trial court found that there was due to plaintiffs for work performed at Southpark: $9,811.24 to Peterson, $12,274.97 to Kay, $4,459.57 to Lundy, and $2,952.04 to Snodgrass. The court ordered payment of liens, and, in case of default of payment to plaintiffs by defendants, that the premises owned by defendant Martin Bucksbaum, as trustee of General Growth Properties, should be sold to satisfy the amounts due.

■■ Defendants on their appeal in which they raise several issues with respect to the sufficiency of the notices and claims, remind this court, as stated in *Koester v. Huron Development Co.* (1962), 25 Ill. 2d 337, 340, 185 N.E.2d 196, that the statutes creating mechanics' liens are in derogation of the common law and must be strictly construed. We should additionally note, in analysis of such principle so established, that, as stated by the Illinois Supreme Court in *United Cork Companies v. Volland* (1937), 365 Ill. 564, 572, 7 N.E.2d 301, that:

"* * * [this] doctrine of strict construction was never meant to be applied as a pitfall to the unwary, in good faith pursuing the path marked by the statute, nor as an ambuscade from which an adversary can overwhelm him for a immaterial misstep. Its

function is to preserve the substantial rights of those againt whom the remedy offered by the statute is directed, and it is never employed otherwise."

The first contention on this appeal made by defendant is that plaintiffs failed to substantially comply with the owner notification provisions of the statute contained in section 24 of the Mechanics' Liens Act (Ill. Rev. Stat. 1973, ch. 82, par. 24). That section provides in part:

"Subcontractors * * * may at any time after making his contract with the subcontractor, and shall within 90 days after the completion thereof, * * * cause a written notice of his claim and the amount due or to become due thereunder, to be sent by registered or certified mail, with return receipt requested, and delivery limited to addressee only, to or personally served on the owner of record or his agent or architect, or the superintendent having charge of the building or improvement and to the lending agency, if known * * *."

This notice to the owner has been determined to be the very substance upon which a mechanics' lien may be predicated (*Roth v. Lehman* (1st Dist. 1953), 1 Ill. App. 2d 94, 97, 116 N.E.2d 413). The trial court, in its order of January 22, 1976, found that each plaintiff had delivered and served upon defendant Martin Bucksbaum a notice to owner of plaintiffs' claim of lien by mailing said notice by certified mail as provided by statute. The trial court in the present case heard the evidence and saw the witnesses and it was the duty of the trial court to make a determination of the facts and its findings are presumed to be correct. We do not substitute our findings for those of the trial court unless the findings are clearly and manifestly against the weight of the evidence (*Olson v. Olson* (2d Dist. 1965), 66 Ill. App. 2d 227, 236, 213 N.E.2d 95; *In re Estate of Kime* (3d Dist. 1976), 42 Ill. App. 3d 505).

■■■ A copy of a deed recorded in the office of the recorder of deeds for Rock Island County indicated that on September 30, 1970, the property in question was conveyed to Martin Bucksbaum, as trustee for General Growth Properties. That document also gave a Des Moines, Iowa, address for Bucksbaum. Robert Michaels, an attorney and a director of General Growth Development Corporation and General Growth Management Corporation, testified at the trial that General Growth Management was the predecessor to General Growth Properties, and that at the times relevant to the action in the instant case, Bucksbaum served as President of General Growth Development and had "no relationship" with either General Growth Management or General Growth Properties. Michaels' testimony also indicated that the three General Growth companies all have offices in the same general location in

Des Moines. It appears from the record that each plaintiff mailed a notice of claim of lien to defendant Bucksbaum at the Des Moines, Iowa, address. One or more of the notices may have been sent to "Martin Bucksbaun." Additionally, the notices may have been sent to Bucksbaum at "General Management Corporation," "Also known as General Gross Development Company." Apparently all the notices were sent by certified mail with return receipt requested, and the notices of plaintiffs Lundy, Kay and Peterson were marked for delivery to addressee only. While the notice which was sent by Snodgrass was not marked for delivery to addressee only, it appears from the record that the receipt for the Snodgrass notice was in fact signed by Bucksbaum. While notices are clearly required as a basis for a mechanics' lien under the authorities, as stated in *Watson v. Auburn Iron Works, Inc.* (2d Dist. 1974), 23 Ill. App. 3d 265, 273, 318 N.E.2d 508:

> "* * * under the circumstances here [where the omission of the limited delivery language did not result in a lack of notification,] the omission to limit delivery to the addressee only is not a deprivation of notice and does not invalidate the claim of lien."

We believe, on the basis of the record in this cause, that defendants failed to sustain their burden of demonstrating that the trial court's ruling was against the manifest weight of the evidence. Defects, if any, in plaintiffs' notices to Bucksbaum were not so material as to result in the deprivation of substantial rights of the parties to this litigation.

■■ As an alternative notice to the owner, each plaintiff also recorded a notice to the owner and a claim of lien with the recorder of deeds for Rock Island County. This procedure is authorized:

> "[i]n all cases where the owner, agent, architect or superintendent cannot, upon reasonable diligence, be found in the county in which said improvement is made, or shall not reside therein * * *." (Ill. Rev. Stat. 1973, ch. 82, par. 25.)

The trial court also found that each plaintiff had recorded a notice and claim of lien to the owner in the office of the recorder of deeds of Rock Island County. The evidence also established that plaintiff Peterson, acting on behalf of all plaintiffs, went to Southpark at least six times, specifically to find an owner's representative, and was unsuccessful each time. In addition thereto, it appears that Peterson was at the site a number of times in connection with his duties as a police officer, and observed that no person was present at the job site. Peterson also made inquiries about the owner's registered agent, and found that the owner's only known office was in Des Moines, Iowa. Testimony presented by defendants indicated that an owner's representative was on the site "a couple of times a week." On the basis of the record as made, we cannot say that the trial

court's finding for plaintiffs' as being duly diligent in attempting to locate the owner within Rock Island county was against the manifest weight of the evidence.

Defendants contend in this court that the recorded notices are insufficient because they are not filed "against the person making the contract and the owner" in accordance with section 25 of the Mechanics' Liens Act (Ill. Rev. Stat. 1973, ch. 82, par. 25). While the notices to the owner are captioned to the attention of Martin Bucksbaum, the bodies of the notices clearly state the claim is made by way of a contract with defendant Malstrom & Sharp. The recorded claims also refer to "General Management Corporation" also known as "General Gross Development Company" and also referred to plaintiffs oral contracts to supply trucks and materials.

While some of the recorded notices may have indicated that Bucksbaum was affiliated with General Growth Management or General Gross Management, we do not believe plaintiffs' notices can be held inadequate by reason of such references. Section 25 (Ill. Rev. Stat. 1973, ch. 82, par. 25) provides that the record claim of lien shall be verified by affidavit and "shall consist of a brief statement of his contract or demand, and the balance due after allowing all credits, and a sufficient correct description of the lot, lots or tract of land to identify the same."

■■ A recorded notice is not defective because it fails to state information not required by the statute (*Beck Coal & Lumber Co. v. H. A. Peterson Manufacturing Co.* (1908), 237 Ill. 250), and a recorded claim of lien has been held sufficient in spite of failure to include the owner's name therein (*Sorg v. Crandall* (1908), 233 Ill. 79). Each recorded claim of lien stated that the claim arose from an oral contract to supply trucks and materials for the construction of subbase for erection of a building. We believe that this was a sufficient brief statement of the contract, as required by the statute. (*Stepina v. Conklin Lumber Co.* (1st Dist. 1907), 134 Ill. App. 173, 180.) Each claim of lien was verified by the respective plaintiffs, in a manner which sufficiently complied with the statutory requirements (Ill. Rev. Stat. 1973, ch. 82, par. 25; *Grace v. Oakland Building Association* (1897), 166 Ill. 637). The conclusion of the trial court, therefore, that the claims of liens substantially complied with the statutory requirements does not appear to be contrary to the manifest weight of the evidence.

■■ Defendants finally argue that the fill hauled by plaintiffs may have been placed on tracts not owned by defendants, and that plaintiffs' liens must fail for this reason. The trial court, however, after hearing the evidence, found otherwise. The testimony in the trial court involved witnesses who pointed out on a map of Southpark the areas where the fill was placed. The trial court apparently found that they pointed to the area

actually owned by defendants and where Southpark was being developed. On the basis of the record, therefore, we cannot conclude that the finding of the trial court on this issue or on any other issues presented on appeal in this court was against the manifest weight of the evidence.

For the reasons stated, therefore, the judgment of the Circuit Court of Rock Island County is affirmed.

Affirmed.

STOUDER and BARRY, JJ., concur.